UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony Howell, ) | C/A No. 5:12-cv-02554-DCN-KDW |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Carolyn W. Colvin,[1] Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be AFFIRMED.

I. Relevant Background

A. Procedural History

Plaintiff filed his application for SSI on May 18, 2010, alleging he became disabled on October 1, 2007.[2] Tr. 110. His application was denied initially and upon reconsideration, Tr. 92-95, 100, and Plaintiff requested a hearing, Tr. 103. An Administrative Law Judge ("ALJ")

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

[2] During his ALJ hearing, Plaintiff amended his onset date to May 11, 2010. Tr. 79.

held a hearing on April 19, 2011. Tr. 54-86. The ALJ issued an unfavorable decision on July 6, 2011. Tr. 11-21. The Appeals Council denied Plaintiff's request for review on August 17, 2012, making the ALJ's decision the final decision for purposes of judicial review. Tr. 2-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on September 5, 2012. ECF No. 1.

### B. Plaintiff's Background

Plaintiff has a twelfth grade education plus three and a half years technical training for welding and pipe fitting. Tr. 60. Plaintiff was 53 years old on the date of his administrative hearing. Tr. 58. He has past relevant work ("PRW") as an auto mechanic. Tr. 62.

### C. Administrative Proceedings

#### 1. Plaintiff's Testimony

Plaintiff appeared for an administrative hearing on April 19, 2011. Tr. 56-86. Plaintiff testified that he was 53 years old and he lives in a house with his mother who pays all their expenses. Tr. 58-59. Plaintiff testified that he graduated from high school and has three and a half years of vocational training in welding and pipe fitting. Tr. 60. Plaintiff testified that he last worked driving a forklift in May 2005. Tr. 61. Plaintiff testified that before May 2005 he worked as an automotive mechanic in a junkyard for about 18 years, stripping cars and driving a forklift. Tr. 62. Plaintiff testified that he never utilized his degree in pipefitting. Tr. 62. Plaintiff testified that his knee and hip started bothering him in 2005 so that he could not continue working. Tr. 63. Plaintiff testified that once a day he goes to his friend's house to feed his horses. Tr. 64. Plaintiff testified that he mows the grass, does "a little bit of yard maintenance," and plants flowers. Tr. 64, 66. Plaintiff testified that he vacuums, mops, sweeps, does the dishes and the laundry, he and his mother make the beds, and Plaintiff cooks. Tr. 64-65. Plaintiff testified

he watches TV and reads the paper and magazines. Tr. 65. Plaintiff testified that his aunts and cousins visit him once a week. Tr. 65-66. Plaintiff testified that he lost his driver's license in 1985 due to speeding tickets and could not afford the higher insurance to get it back. Tr. 66-67. Plaintiff testified that he likes to plant flowers and a "few tomato plants." Tr. 67. Plaintiff testified that he takes care of his own personal hygiene and it has been almost four years since he last drank any alcohol, although he used to drink fairly heavily. Tr. 68.

Plaintiff testified that he can no longer work due to knee and hip pain. Tr. 68-69. Plaintiff stated that he can sit for about 10 to 15 minutes and then has to get up, and can stand from 10 to 15 minutes and then has to sit down. *Id.* Plaintiff testified that he can walk "100 yard - - 100 feet something like that," and then his knee starts to hurt. Tr. 69. Plaintiff testified that he can walk up and down stairs and walking hurts his knee some, but mostly his hip. *Id.* Plaintiff testified that he can bend down and pick up items and he can lift and carry about 10 to 15 pounds. Tr. 70. Plaintiff testified that, in addition to his knee and hip, his "back hurt a little bit." *Id.* Plaintiff testified that he has right knee pain and he has to elevate his knee due to swelling approximately an hour and a half or two hours in an eight-hour period. Tr. 70-71. Plaintiff testified that his knee swells when he walks and that he has been using a cane since 2006. Tr. 71. Plaintiff testified that he has had injections in his right knee which helped for about a month. *Id.* Plaintiff testified that most of his treatment has been for right knee pain. Tr. 72. Plaintiff stated that he has been prescribed medication to control his pain and this takes "the edge off." *Id.* Plaintiff testified that during the hearing his knee pain was "probably a 6" on a scale of 1 to 10, and that if he started to walk or stand for more than an hour his pain would be "up there around 10." *Id.* Plaintiff testified that his right hip also hurts when he stands or walks a lot. *Id.* Plaintiff testified that his pain medication, which he stated was like a muscle relaxer, makes him "limber."

3

Tr. 73. Plaintiff testified that he has mild pain in his lower back two or three times a day, and once a day it hurts "pretty bad." *Id.* Plaintiff testified that he gets dizzy three or four times a day after he has been sitting for a while and then stands up. Tr. 74. Plaintiff testified that he has to rest while washing dishes, and sit down while using the vacuum. Tr. 74-75. Plaintiff stated that he has fallen even when using his cane. Tr. 75. Plaintiff testified that he walks 200 to 300 feet to open the hay feeder, takes a break, and then walks back to his house. *Id.* Plaintiff testified that it takes him all day to clean the house due to taking breaks, and once a week he has a "bad day" and is unable to do any chores around the house. Tr. 76.

2. Vocational Expert Testimony

Vocational Expert ("VE") Carl Weldon also testified at the administrative hearing. Tr. 79-86. Mr. Weldon stated that Plaintiff's past work as an auto mechanic was medium and skilled work, and his work as an auto mechanic in an auto salvage business was heavy and skilled work. Tr. 80. The ALJ posed a hypothetical question regarding an individual who was the same age as Plaintiff with the same education, prior work experience, and ability to do medium work with the following limitations: "occasional ladder and climbing, frequent balancing, stooping, kneeling, crawling. Avoid concentrated exposure to hazards" because of his cane, and the ability to change positions. Tr. 80-81. The VE found that one with such limitations would be unable to perform Plaintiff's PRW. Tr. 81. The VE testified that Plaintiff would have the following transferable skills: "the ability to work with tools, to understand hazardous and dangerous situations, to understand the workings of automobile motor, the diagnostics, ability to fix or to diagnose and fix problems." Tr. 82. The VE identified the following jobs that an individual could perform utilizing those skills at the light exertional level: a tune-up mechanic, oil change technician, hand packing jobs, inspecting occupations, and food service workers. Tr. 82-84. When Plaintiff's

4

counsel amended the ALJ's hypothetical to an individual who could not stand more than two hours in an eight hour day, the VE testified that such an individual could not perform any of the jobs he mentioned. Tr. 85. The ALJ then asked would any of the jobs listed by the VE be available if an individual "were able to sit or stand but could not stand more than up to two hours out of a day." Tr. 86. The VE answered no. *Id.*

II. Discussion

　　A.　　The ALJ's Findings

In her July 6, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 11, 2010, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: bursitis of the right hip and early degenerative changes of the right knee (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can only occasionally climb ladders, ropes or scaffolds; he can frequently balance, stoop, kneel and crawl; he must avoid concentrated exposure to hazards; and he should be allowed to change positions during the workday.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on June 5, 1957, and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  The claimant has acquired work skills from past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 416.969, 416.969(a) and 416.968(d)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 11, 2010, the date the application was filed (20 CFR 416.920(g)).

Tr. 13-20.

B.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that, for eligible individuals age 18 or older, benefits shall be available to those who are "under a disability," defined as one who is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant

numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3) (applying § 405(g) judicial review provisions to SSI matters). The scope of that federal court review is narrowly tailored to determine whether the findings of the

7

Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

   C.    Analysis

Plaintiff argues that the ALJ erred in the following ways: (1) by failing to give Plaintiff and his representative an opportunity to review and comment on post hearing evidence; (2) by failing to find he met Listing 1.00; and (3) by applying the wrong legal standard to determine if he was disabled. Pl.'s Br. 1, ECF No. 20. The Commissioner counters that the ALJ's decision is supported by substantial evidence and contains no harmful legal error. Def.'s Br. 1, ECF No. 22.

1. Compliance with HALLEX[3]

Plaintiff first argues that the ALJ committed reversible error by failing to give Plaintiff the opportunity to comment on the report of Dr. Campbell which "was not part of the record as presented to [Plaintiff] and his attorney at the hearing by the ALJ."[4] Pl.'s Br. 5. Plaintiff contends that HALLEX I-2-5-28E provides that the claimant and his representative must be given an opportunity to review, comment on, or request a supplemental hearing on new evidence not provided by the claimant that the ALJ received after the hearing, unless this right was waived. *Id.* at 4. The Commissioner cites to *Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000) and *Christensen v. Harris County*, 529 U.S. 576 (2000), in support of her argument that there was no error because HALLEX is not binding and "lacks the force of law." Def.'s Br. 7. The Commissioner further argues Plaintiff failed to show how he was harmed by the ALJ not conducting a supplemental hearing, and that Plaintiff briefed this issue to the Appeals Council. Def.'s Br. 7; *see* Tr. 228-29. After reviewing the Representative Brief, the Appeals Council determined there was no basis to review the ALJ's decision. Tr. 2-5.

On March 30, 2011, Plaintiff was examined by Dr. Victor Campbell for a Disability Determination Evaluation. Tr. 409-12. Dr. Campbell noted that Plaintiff was "able to ambulate effectively but he certainly is limping on the right leg and he has a walking cane in the right

---

[3] HALLEX is the Social Security Administration's Hearings, Appeals and Litigation Law manual. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels. *See* http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-0-1.html (last visited Feb. 4, 2014).

[4] At the administrative hearing on April 19, 2011, the ALJ identified the medical record evidence as exhibits 1F through 20F, and asked Plaintiff's counsel if that was consistent with his records and complete. Tr. 57. Counsel agreed and offered no objections. *Id.* A March 30, 2011 Disability Determination Evaluation by Victor Campbell, M.D., was later made a part of the record as exhibit 22F. The undersigned is unable to determine conclusively when Dr. Campbell's report was submitted, but the fax header on the document is dated April 20, 2011, which is the day after the hearing.

hand. He is able to walk 50 feet down the hall and back adequately to carry out ADLs." Tr. 409. Dr. Campbell noted:

> The location is primarily in the right hip and has been described as bursitis and in the right knee it has been described as arthritis. The pain in the right hip is fairly well localized to the lateral aspect of the right hip and he designates the region of the trochanter of the right hip. Pain in the right knee is also well localized. It does not go anywhere, neither up or down the leg.

*Id.*

Plaintiff argues that he was not given an opportunity to question the VE about Dr. Campbell's limitations, particularly, Plaintiff's need to use a cane and the impact "the limitations of strength and range of motion in his lower extremities would have on [Plaintiff's] ability to work." Pl.'s Reply 2, ECF No. 26. The Commissioner argues that the ALJ's failure to conduct a supplemental hearing was harmless as the ALJ thoroughly addressed Dr. Campbell's report in his decision, and that Dr. Campbell's "findings were consistent with the other evidence of the record, namely the findings of Dr. Armocida"[5] and, therefore, the lack of a supplemental hearing or comment period "did not affect the ultimate outcome of the administrative decision." Def.'s Br. 7-8. The Commissioner further argues that Dr. Campbell examined Plaintiff only once "and his opinion was inconsistent with the records or opinions of Drs. Milas, Tollison, and Van Slooten." *Id.* at 8.

Addressing Plaintiff's argument that the ALJ's failure to follow the requirement of HALLEX was reversible error, the undersigned notes that HALLEX, as an internal guidance document, lacks the force of law. *Laur v. Astrue*, No. TMD 08–112, 2010 WL 481318, at *2 (D.Md. Feb. 4, 2010); *see Bordes v. Comm'r*, 235 Fed. Appx. 853, 859 (3d Cir. 2007)

---

[5] Dr. Frank Armocida examined Plaintiff on February 10, 2011, upon referral of Plaintiff's treating physician, Dr. Milas. Tr. 380-82. Dr. Armocida assessed Plaintiff with right hip tronchanteric bursitis and right knee osteoarthritis. Tr. 381.

(explaining that HALLEX does not carry the force of law because it provides internal guidance and not substantive rules); *Melvin v. Astrue*, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009) (same). The undersigned further finds that Plaintiff's contention that the ALJ failed to comply with HALLEX I-2-5-28, without more, is insufficient to establish reversible error. *See Way v. Astrue*, 789 F. Supp. 2d 652, 665 (D.S.C. 2011) (An ALJ's failure to comply with HALLEX, without more, does not provide a basis for remand). The undersigned recommends that Plaintiff's allegations of error on this ground be denied.

### 2. Listing 1.00

Plaintiff contends that the ALJ erred in finding that he did not meet Listing 1.00 because he has "an inability to ambulate effectively." Pl.'s Br. 5. Plaintiff further argues that the ALJ erred in failing to consider the effects of his obesity when determining if he met Listing 1.00(Q). *Id.* at 7. The Commissioner argues that Plaintiff does not "point to sufficient probative evidence to establish that he met Listing 1.00, because there are no medical findings of record that support each of the requisite criteria for Listing 1.00, and he does not properly advance his arguments on this issue." Def.'s Br. 9. The Commissioner further contends that the ALJ considered Plaintiff's obesity "in relation to the rest of the record evidence, including the physical examination findings related to his back pain." *Id.* The Commissioner contends that the ALJ considered the total record and "properly determined that Plaintiff was capable of performing work at no more than the medium level of exertion." *Id.*

In determining whether substantial evidence exists, the court must consider the record as a whole. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). The court may not, however, reweigh conflicting evidence, evaluate the credibility of evidence, or substitute its own judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

11

2012) (quoting *Johnson v. Barnhart*, 434 F.3d at 653). Listing 1.00 provides that the ALJ "will determine whether an individual can ambulate effectively . . . based on the medical and other evidence in the case record."  20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(a).

> The regulations define the phrase "inability to ambulate effectively" as follows:
>
> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [ ] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities. . . . To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, *two crutches or two canes,* the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(B)(2)(b)(l)-(2) (emphasis added).

In support of his argument that he meets Listing 1.00, Plaintiff argues that the "listing itself does not require the use of [bilateral hand-held assistive devices]" and that the "substantial weight of the evidence shows that he does need a cane."  Pl.'s Br. 5-6.  The ALJ "considered all the listings found under section 1.00 (musculoskeletal system), and [found] that the medical evidence of record does not satisfy the criteria specified in [those] listings." Tr. 13. Despite Plaintiff's use of a cane, the evidence in the record does not establish that Plaintiff has "an extreme limitation of the ability to walk" as defined in Listing 1.00.

The record before the court demonstrates that the ALJ's finding is supported by substantial evidence.  First, there is no evidence in the record that Plaintiff needs two canes, two crutches, or a walker, which are examples of ineffective ambulation included in Listing 1.00.

Further as the ALJ noted, Plaintiff testified that he cuts the grass and does yard maintenance; he does most of the household chores, including mopping, vacuuming, washing dishes and laundry; and he prepares meals. Tr. 14. Plaintiff also testified that he "walks a distance of 100 yards one-way to the horse barn," and that he can "walk for 100 feet before experiencing knee and hip pain." *Id.* The undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff does not have an inability to ambulate that interferes with his "ability to independently initiate, sustain, or complete activities" under Listing 1.00. Therefore, Plaintiff's argument that the ALJ erred in finding that he does not meet Listing 1.00 is without merit.

Turning to Plaintiff's argument that the ALJ erred in not finding him disabled under Listing § 1.00(Q), Social Security Ruling 02-1p states that obesity may be considered alone or in combination with another medically determinable impairment as a factor in both "meets" and "equals" determinations at Step Three of the sequential evaluation process. SSR 02-1p, 2002 WL 34686281, at * 5.  Listing 1.00(Q) provides that:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.00(Q).

Having reviewed the evidence in the record, the undersigned finds that there is no evidence that suggests that Plaintiff's obesity alone or combined with other impairments rises to the level of a listed impairment. A review of Plaintiff's medical records reveals almost no discussion of Plaintiff's purported obesity and its impact on his ability to function, and nowhere

in the record is there any mention by Plaintiff or his attorney that his obesity interfered with his ADLs or his ability to work. The undersigned further finds that the ALJ specifically stated that she reviewed all the listings under section 1.00 and determined that no listing was met. Tr. 13. Given the dearth of evidence in the record to support a finding that Plaintiff's obesity contributed to or equaled any listed impairment, the undersigned finds that substantial evidence supports the ALJ's determination that the medical evidence of record does not support a finding that Plaintiff was disabled under Listing 1.00Q. The undersigned therefore finds Plaintiff's assignment of error with respect to this issue is without merit.

### 3. Application of Incorrect Legal Standard

Finally, Plaintiff argues that the ALJ committed reversible error when she applied the wrong standard of law and cites to the ALJ's finding that Plaintiff's "admitted activities of daily living were substantially more consistent with an individual able to sustain competitive work activity then they are of an incapacitated person."  Pl.'s Br. 9. Plaintiff argues that he does not have to show he is incapacitated, but that he is incapable of sustained gainful employment.  *Id.* Plaintiff argues that although he is able to do some chores, the length of time it takes him to do these chores shows he is "not capable of substantial gainful employment and is disabled."  *Id.* The Commissioner argues that Plaintiff is taking the above-quoted sentence out of context and a "fair reading of the entire decision . . . shows that the ALJ in that sentence was merely mentioning that Plaintiff's daily activities were significant."  Def.'s Br. 11.

Social Security Ruling 96-8p, 1996 WL 374184, at *7, provides:

> The RFC [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or

>an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Here the ALJ found that Plaintiff has the RFC "to perform medium work as defined in 20 CFR 416.967(c) except he can only occasionally climb ladders, ropes or scaffolds; he can frequently balance, stoop, kneel and crawl; he must avoid concentrated exposure to hazards; and he should be allowed to change positions during the workday." Tr. 13-14. In making this determination, the ALJ considered and discussed Plaintiff's ADLs, his medical history, and the opinion evidence in the record. *See* Tr. 14-18. The ALJ concluded "the overwhelming evidence supports the claimant's ability to perform medium work with the additional physical limitations specified in the above-stated residual functional capacity assessment." Tr. 18.

Reviewing the ALJ's decision in its entirety, and considering the record evidence, the undersigned is of the opinion that the ALJ's statement concerning the activities of "an incapacitated person" may have been a poor selection of words, but was not intended as a statement of law. Because the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, the undersigned finds Plaintiff's argument with respect to this issue is without merit.

III. Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that the Commissioner performed an adequate review of the whole

record, including evidence regarding Plaintiff's conditions, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, and Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

February 5, 2014                                                          Kaymani D. West
Florence, South Carolina                                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**